JCJQrimS

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    UNITED STATES OF AMERICA
3
            v.                          16 CR 841 (GBD)
4                                       Sentence

5   EVALDAS RIMASAUSKAS

6               Defendant
    ------------------------------x
7
                                        New York, N.Y.
8                                       December 19, 2019
                                        10:05 a.m.
9

10  Before:

11                  HON. GEORGE B. DANIELS
                                        District Judge
12

13                      APPEARANCES

14  GEOFFREY S. BERMAN
        United States Attorney for the
15      Southern District of New York
    EUN YOUNG CHOI
16  OLGA I. ZVEROVICH
        Assistant United States Attorney
17
    PAUL D. PETRUS, JR
18      Attorney for Defendant

19  ALSO PRESENT:  JONATHAN POLONITZA, FBI
                   YANA AGOUREEV, Interpreter (Russian)
20

21

22

23

24

25

JCJQrimS

1          (Case called)

2          DEPUTY CLERK:  Will the parties please rise and make

3     they're appearances beginning with the government.

4          MS. CHOI:  Good morning, your Honor.

5          Eun Choi on behalf of the government.  With me at

6     counsel table is Olga Zverovich of our office, as well as

7     Special Agent John Polonitza of the FBI.

8          THE COURT:  Good morning.

9          MR. PETRUS:  Good morning, your Honor.

10         Paul Petrus on behalf of Mr. Evaldas Rimasauskas.

11         THE COURT:  Good morning.  I received further

12    submissions from the parties after our last meeting.

13         Let me turn back first to the government.  Does the

14    government wish to be heard further on the sentence?

15         MS. CHOI:  No, your Honor.  I think it's set forth in

16    our submissions what the government's position is.  If your

17    Honor has any questions regarding either the prior submission

18    or our more recent submission, we're happy to answer them.

19         THE COURT:  Mr. Petrus, did you want to be heard

20    further?

21         MR. PETRUS:  Your Honor, I too rest on the record that

22    we've submitted.  I would just also add that, actually, he

23    served, including the time in Lithuania, approximately two

24    years and nine months, not two years and eight months.  So for

25    all the reasons I've submitted, I believe a sentence of time

JCJQrimS

1      served is the correct and just one in this matter.

2              THE COURT:  Let me turn back to the government then.

3      Remind me of the extent of the loss and how that has been

4      calculated.

5              MS. CHOI:  Yes, your Honor.  There was -- as you know,

6      the guidelines are key to intended loss, so there was an amount

7      of loss that was attributable to victim one and an amount of

8      loss attributable to victim two, the first of which -- one

9      moment, your Honor.

10             (Attorneys consult)

11             MS. CHOI:  I'm just trying to find an exact breakdown,

12     but the amount of intended loss was $120 million, which is

13     essentially is about $24 million that was successfully stolen

14     from victim one; that victim one received after the Latvian

15     civil fraud proceeding where the Latvian court made the final

16     determination that in fact these were funds that had been

17     stolen from victim one.  Those are the ones that went directly

18     into the bank account that the defendant opened and had control

19     over.

20             And then the second sort of tranche of that money is

21     about $97 million, I believe, that is attributable to victim

22     two.  Of that, a substantial portion was in fact frozen at the

23     time that those wires were detected to be fraudulent and

24     returned to victim two, so victim two did not suffer an actual

25     loss of that amount, but there is still remaining an amount

JCJQrimS

1    that is outstanding.

2            One moment, your Honor.

3            So, the exact numbers, just so you have them, your

4    Honor, are 23.26 million for victim one and 98.87 million for

5    victim two.  And so the intended loss figure is the sum of

6    those two because that's the total amount that was intended by

7    the defendant.  And the actual loss outstanding is about a

8    $23 million -- whatever is in the restitution order, but it's

9    that amount that is still outstanding that has not been

10   successfully reversed back to victim two at this point in time.

11   And we are hoping that once there is a situation in which final

12   judgment is entered in this case, we can continue with our

13   attempts to get that money back from Latvia.  That specific

14   amount, your Honor, I think we handed up the restitution order

15   last time is $26,479,079.24.  So that's the amount that's

16   outstanding that was in fact an injury to victim two.

17           THE COURT:  I'm still not clear about when you say

18   you're hopeful to see if you can get the money back.  I'm not

19   sure what that means.

20           MS. CHOI:  Meaning, we're still in the midst of civil

21   procedures in Cyprus to try to get those funds back.

22           THE COURT:  And those funds are where.

23           MS. CHOI:  They're in Cyprus; they're frozen in

24   Cyprus.  They're frozen in some other places as well.  Those

25   are some sort of civil forfeiture division that we are trying

JCJQrimS

1     to do with our lawful enforcement partners outside of the

2     United States.

3              THE COURT:  How much money has been identified and

4     frozen that's available for you to --

5              MS. CHOI:  That is the amount -- some of it -- that is

6     the amount that would be restitution in the sense that that's

7     the amount that the defendant in fact caused harm to victim

8     two, and that's how much money they were essentially out from

9     the fraud.

10             A portion of that money has been frozen in various

11    countries, and we're trying to get that money back, but it is a

12    lengthy process because it involves civil forfeiture remedies

13    in countries that are all over the place, in part, because

14    those of the countries in which the accounts were held that the

15    defendant and whomever he was working with then sent the stolen

16    funds.  So we're trying -- so once that second transfer

17    happened, those funds were in a variety of bank accounts.

18    We're trying to get those funds back, but those are sort of our

19    efforts to date.

20             THE COURT:  So what amount of money was actually --

21             MS. CHOI:  Stolen?

22             THE COURT:  -- lost and unrecoverable?

23             MS. CHOI:  Right now, it is not recovered, the

24    $26 million in the restitution amount.

25             THE COURT:  When you say "not recovered," does that

JCJQrimS

1      include the money you identified in accounts?

2                MS. CHOI:  Yes.

3                THE COURT:  How much money is unknown in terms of

4      where it's gone?

5                MS. CHOI:  The majority -- I'm being told by the case

6      agent, the majority of the $26 million is actually lost and we

7      did not freeze it in time.

8                THE COURT:  So what amount of money is frozen?

9                MS. CHOI:  Your Honor, one moment.

10               (Pause)

11               MS. CHOI:  I think it's approximately $5 million

12     that's actually been frozen that we've been able to -- your

13     Honor, just as background, the way that this works is once a

14     fraud was detected, we had to send requests to freeze the money

15     to various countries, and it was not a hundred percent

16     successful.  So there will be significant loss to victim two.

17               In any event, of course, with regard to restitution,

18     to the extent that the victim receives those funds from these

19     outstanding legal requests that are made to third-party

20     countries, that restitution amount would decrease for the

21     defendant.  He would not be liable for the full amount.

22               THE COURT:  But you've identified approximately

23     $5 million in accounts frozen of approximately $25- or

24     $26 million?

25               MS. CHOI:  Yes.  Your Honor, I don't have the precise

JCJQrimS

1    numbers.  And I can, of course, let your Honor know what the

2    precise numbers are.  I just don't have them with me.

3              THE COURT:  I'm just trying to understand where do you

4    think that money went?  And I know you say that there was some

5    attempt at cooperation by the defendant, and I'm trying to

6    figure out whether or not there is any significant or any leads

7    that were provided that give you some idea of what, (1)

8    happened to this money, and (2) who else was involved in this

9    crime.

10             MS. CHOI:  Your Honor, those -- I mean, one moment.

11             (Counsel consult)

12             MS. CHOI:  Your Honor, I think the defendant would

13   request a sidebar on the question.

14             THE COURT:  All right.  Come on up.

15          (Continued on next page)

16             (Pages 8 to 24 sealed sidebar)

17

18

19

20

21

22

23

24

25

JCJQrimS

1          (In open court)

2          THE COURT:  Before I hear from the defendant, anything

3   further from the government?

4          MS. CHOI:  No, your Honor.

5          THE COURT:  Anything further?

6          MR. PETRUS:  Again, I just remind the Court my client

7   has no prior record.  It's his first offense, and I ask the

8   Court, for all the reasons I submitted, to give him a sentence

9   of time served, and Mr. Rimasauskas is prepared to say

10  something.

11         THE COURT:  Yes, sir.

12         THE DEFENDANT:  Your Honor, I regret that I committed

13  this crime.  And I can promise you, your Honor, that it will be

14  the first and last time I find myself in a courtroom.  I very

15  much want to return back to my native country and to hug my

16  relatives that I have not seen for a very long time.  I want to

17  attempt to resurrect my construction business, and I want to

18  make an honest and sober living.  And, once again, I apologize.

19  And thank you, your Honor.

20         THE COURT:  All right.  I've reviewed the presentence

21  report and the factual recitations in the presentence report.

22  I accept the guideline range as calculated.  There is a total

23  offense level of 30 and a Criminal History Category I.

24         I have considered all the factors in 18 U.S.C. 3553(a)

25  relative to sentence, and I've reviewed the submissions by the

JCJQrimS

1    parties and I have considered the extensive arguments made by

2    the parties with regard to same.

3           In this case, given the facts as laid out to me, I

4    believe the defendant warrants some consideration with regard

5    to his attempted proffers and cooperation with the government,

6    although there is no basis for me to conclude that that

7    cooperation led to any significant investigations or

8    prosecutions, or that that attempted cooperation was considered

9    to be valuable or significant to the government in

10   investigating this crime or any other crime.  I have also taken

11   into consideration that the defendant has no prior record.

12          But I think all of those factors warrant my imposing a

13   sentence giving consideration to those factors, and the

14   arguments made by counsel warrant a sentence below the

15   guideline range.  However, I think that this is a very, very

16   serious crime, and I think a sentence of time served is

17   inappropriate for the nature of this crime.  It's a significant

18   crime with millions of dollars of losses in a multimillion

19   dollar, complex international scheme that the defendant played

20   a major role in.  Obviously, there had to be involved other

21   individuals who still have not been prosecuted for this crime

22   and millions of dollars that are still unaccounted for.

23          So, in this case, considering all of those factors, I

24   am going to impose a sentence of 60 months.  I am going to

25   order restitution and forfeiture in the amount of $26,479,079,

1     and forfeiture in the amount -- was there a consent forfeiture

2     order already?  I know there was a restitution order.

3             MS. CHOI:  Your Honor, I believe that we handed up the

4     consent order of forfeiture.  At least it's on the docket

5     already.  And also we handed up at the last proceeding the

6     restitution order, as well as the judicial order of removal.

7             THE COURT:  Yes, I've signed the judicial order of

8     removal, and I will order his immediate removal after he has

9     served his sentence.  I did sign the order of restitution.  I

10    don't see a copy of the forfeiture order.

11            MS. CHOI:  Your Honor, I believe that you entered it

12    at the time of the plea.

13            THE COURT:  Yes.  I was going to say it was probably

14    entered at the time of the plea, not at the time of the

15    scheduled sentence.  Is that on the docket?  It may be on the

16    docket.  We'll find out and have that filed.

17            What's the government's position as to whether or not

18    a period of supervised release is appropriate to impose?

19            MS. CHOI:  Your Honor, I think that it would be

20    appropriate to the extent that he is for some reason not

21    removed in a timely fashion, and generally in those

22    circumstances the supervised release conditions include that he

23    would obey whatever direction he got from immigration

24    authorities.

25            THE COURT:  Then I'm going to impose a period of two

JCJQrimS

1    years supervised release, if he is not immediately removed

2    after serving the balance of his sentence.

3            The mandatory conditions of supervised release are

4    imposed.  The defendant shall not commit another federal,

5    state, or local crime.

6            The defendant shall not unlawfully possess a

7    controlled substance.

8            The defendant shall cooperate in the collection of any

9    DNA as directed by the probation office.

10           I will also impose the standard conditions of

11   supervision 1 through 12 as recommended by the presentence

12   report, with the special condition that defendant shall obey

13   the immigration laws and comply with the directives of

14   immigration authorities.  And if he is released from custody in

15   the United States, he shall participate in an outpatient

16   treatment program which includes testing to determine whether

17   defendant has reverted to the use or abuse of drugs or alcohol.

18           As I indicated, I will order restitution.

19           Obviously, I have very little confidence that any

20   significant amount of restitution will be obtained in this

21   case, but I will order that restitution be paid in monthly

22   installments to begin 30 days after his release from custody,

23   in monthly installments of 10 percent of his gross monthly

24   income.

25           I do have the forfeiture order.  It was signed and, I

JCJQrimS

1     believe, filed on March 20, 2019.

2          Mr. Rimasauskas, you have the right to appeal this

3     conviction and sentence to the extent that you've not waived

4     such right at the time of your plea.

5          If you wish to appeal any portion of this conviction

6     of sentence, you should discuss it immediately with your

7     attorney.

8          In order to preserve your right to appeal, a notice of

9     appeal must be filed on your behalf within 14 days of entry of

10    today's judgment.

11         Anything further by the government?

12         MS. CHOI:  Your Honor, just a minor housekeeping

13    issue, and I might have missed it.  We just wanted to make sure

14    the special assessment of $100 had been imposed.

15         THE COURT:  Yes, I'm sorry.  If I did not state that,

16    I must impose also a mandatory $100 special assessment on Count

17    One.

18         MS. CHOI:  Thank you, your Honor.

19         At this time, the government would move to dismiss the

20    open counts of the indictment.

21         THE COURT:  That application is granted.

22         Anything further, Mr. Petrus?

23         MR. PETRUS:  Thank you, your Honor.

24         I would just note that as I put in my sentencing

25    memorandum on page 10, I just note for the record that he was

JCJQrimS

1     arrested and jailed in Lithuania March 14, 2017.  He never made

2     bail.  So I would ask the Court pursuant to 18 U.S.C. 4105 that

3     he be given credit for all of the time he spent in custody,

4     including in the foreign jail.

5              THE COURT:  What's the government's position?

6              MS. CHOI:  Your Honor, that's fine with the

7     government.  We just wanted to make sure, your Honor, that you

8     had the judicial removal order.

9              THE COURT:  Yes.  I have the judicial removal order

10    and the order of restitution and the order of forfeiture.  And

11    they will all be filed today.  So that's the sentence of the

12    Court.

13             MS. CHOI:  Thank you, your Honor.

14             MR. PETRUS:  Thank you, your Honor.

15             On behalf of Mr. Rimasauskas, we recommend and ask the

16    Court seal the off-camera sidebar conversation.

17             MS. CHOI:  No objection, your Honor.

18             THE COURT:  That will be ordered sealed.

19             (Adjourned)

20

21

22

23

24

25